Donald C. DUNCAN, Plaintiff-Appellant,

v.

SAFETY RESPONSIBILITY UNIT, DE-
PARTMENT OF REVENUE, State of
Missouri, Defendant-Respondent.

No. 38407.

Missouri Court of Appeals,
St. Louis District,
Division One.

April 26, 1977.

Sestric, McGhee & Miller, W. Thomas
McGhee, St. Louis, for plaintiff-appellant.

John Ashcroft, Atty. Gen., J. Michael Da-
vis, Asst. Atty. Gen., Jefferson City, Court-
ney Goodman, Jr., Pros. Atty., Clayton, for
defendant-respondent.

PER CURIAM.

This is an appeal by appellant, Donald C.
Duncan, from an order, of the Circuit Court
of St. Louis County entered on August 4,

1976, denying his petition to set aside a revocation of his driver's license for refusal to submit to a chemical test under § 564.444, RSMo.

The issue presented is a narrow one— what constitutes a "refusal" to submit to a chemical breathalyzer test under § 564.444? More specifically, the issue to be resolved is: when a driver is arrested for driving while intoxicated and is requested to submit to a chemical breathalyzer test after being informed that his license may be revoked upon his refusal and the driver indicates that there is no need to take the test and admits that he is intoxicated, does such a statement by the driver constitute a "refusal" under the statute?

The transcript reveals that the parties stipulated to the following facts: on or about June 2, 1976, Mr. Duncan "was apprehended by the State Highway Patrol in St. Louis County"; he was requested by the officer to submit to the chemical test; ". . . Mr. Duncan advised the officer that there was no need to do so and . . admitted that he was drunk."

On June 23, 1976, the Safety Responsibility Unit of the Department of Revenue "sent a revocation notice" to Mr. Duncan informing him that his license was revoked effective July 11, 1976, for "refusal to submit to a chemical test."

Mr. Duncan filed his petition for review in accordance with § 302.311 in two counts seeking a hearing under § 564.444(2.) and requesting the court "to set aside the revocation and to require the Defendant [State] to restore Plaintiff's license" in Count I, and to grant him limited driving privileges under § 302.309 in Count II. The trial court stayed the revocation order pending a hearing. A hearing was held on July 14, 1976.

At the hearing the parties stipulated to the facts concerning the "refusal." A hearing was then held on the issue of limited driving privileges. It was brought out that Mr. Duncan, a resident of Jefferson County, was employed as a private investigator and required an automobile in his employment. Mr. Duncan testified that on the morning of the hearing he had pleaded guilty to the offense of driving while intoxicated, § 564.440.

On August 4, 1976, the court denied Count I of his petition for review seeking to set aside the revocation order, but granted him limited driving privileges during the period of revocation and stayed the order pending appeal.

Within proper time appellant appealed the order denying his petition for review insofar as it related to the refusal of the court to set aside the revocation order.

■■■ On this appeal Mr. Duncan contends that the decision of the trial court denying his petition for review seeking to set aside the revocation was "clearly erroneous"[1] because the "undisputed evidence" proved that he did not "unequivocally refuse to submit to a chemical breath test as required by Section 564.444." He does not dispute that he was arrested or that the officer had reasonable grounds to believe that he was driving a vehicle while intoxicated. He argues that the courts have been "very strict in construing what conduct of an individual constitutes an unequivocal refusal to submit to a chemical breath test."[2] He concludes by stating that "[a]s indicated by the above line of cases, decided pursuant to Section 564.444, revocation is justified only in the existence of the unequivocal refusal and the subsequent frustration of the purpose of the statute which is to allow the police to gain evidence."[3]

1. Cf. *Murphy v. Carron*, 536 S.W.2d 30, 31–32 (Mo.banc 1976).

2. He relies on *Hester v. Spradling*, 508 S.W.2d 194 (Mo.App.1974); *Thomas v. Schaffner*, 448 S.W.2d 319 (Mo.App.1969); and *Gooch v. Spradling*, 523 S.W.2d 861 (Mo.App.1975).

3. He cites for this proposition *Bolling v. Schaffner*, 488 S.W.2d 212 (Mo.App.1972). There is no such purpose contained therein. It is there stated that "[t]he purpose of Section 564.444 V.A.M.S. is two-fold: First, to protect the health and safety of citizens using the highways of Missouri; and second, to punish those guilty of the offense of driving while intoxicat-

The standards upon a hearing to set aside a revocation order and to reinstate a driver's license are set forth in § 564.444, subsection 2. That section provides that if a person's license has been revoked because of a "refusal" to submit to a chemical test he may request a hearing before the court, and

". . . [a]t the hearing the judge shall determine only:

(1) Whether or not the person was arrested;

(2) Whether or not the arresting officer had reasonable grounds to believe that the person was driving a motor vehicle while in an intoxicated condition; and,

(3) Whether or not the person refused to submit to the test." [4]

As to what conduct constitutes a "refusal" for the purpose of determining whether there is to be an administrative revocation of a license has been the subject of numerous decisions.[5] The wide variety of circumstances and the myriad of factual situations do not permit an all inclusive definition of exactly what amounts to a "refusal" within the meaning of § 564.444. See generally, Annot., 88 A.L.R.2d 1064, 1074 (1963) and supplements.

In *Spradling v. Deimeke*, 528 S.W.2d 759 (Mo.1975), our Supreme Court held that a driver who did not take the chemical test either because his attorney advised him not to or because his attorney was not present constituted a refusal within the meaning of the statute. There the Court stated:

"There is no mysterious meaning to the word 'refusal.' In the context of the implied consent law, [§ 564.441, RSMo.] it simply means that an arrestee, after having been requested to take the breathalyzer test, declines to do so of his own volition. Whether the declination is accomplished by verbally saying, 'I refuse,' or by remaining silent and just not breathing or blowing into the machine, or by vocalizing some sort of qualified or conditional consent or refusal, does not make any difference. The volitional failure to do what is necessary in order that the test can be performed is a refusal." *Spradling v. Deimeke*, supra, 528 S.W.2d at 766.

Upon analysis of this test, we are convinced that there was a "refusal" by Mr. Duncan in this case. Mr. Duncan was arrested for driving while intoxicated; he was requested to submit to a chemical test, and he indicated that there was "no need to do so and . . . admitted that he was drunk." Although this statement in and of itself is ambiguous,[6] the stark reality remains that Mr. Duncan did not take the test and that there was a "volitional declination" to submit to the chemical test as

---

ed by revoking such offender's license . . ." 488 S.W.2d at 217. The purpose of the statute is not, as appellant argues, to allow the police to gain evidence.

It is clear that a criminal charge is separate and independent from the proceedings under § 564.444. See discussion in *State v. Byerly*, 522 S.W.2d 18 (Mo.App.1975).

4. There is no dispute in this case that Mr. Duncan was arrested and that the officer had reasonable grounds to believe that he was driving a motor vehicle while in an intoxicated condition.

5. *Gooch v. Spradling*, supra—request to speak to attorney does not constitute refusal; *Thomas v. Schaffner*, supra—desire to take blood test and speak to attorney, no refusal; *Bolling v. Schaffner*, supra—refusal and definition of "request"; *Jones v. Schaffner*, 509 S.W.2d 72 (Mo.1974)—refusal after speaking with attorney; *Hester v. Spradling*, supra—memorandum opinion, no refusal where attorney advised that client was consenting to take test but officer refused to administer it because driver had smoked; *Dain v. Spradling*, 534 S.W.2d 813 (Mo.App.1976)—no refusal when driver was denied request to be permitted to contact lawyer for advice and have lawyer present—"Under the facts . . . appellant did not make an unequivocal and informed refusal to take the breathalyzer test." 534 S.W.2d at 814; *Stenzel v. State, Dept. of Revenue*, 536 S.W.2d 163 (Mo.App.1976); See Comment, Right to Counsel Prior to Submission to Breathalyzer Test—The Impact of Missouri Supreme Court Rule 37.89, 42 Mo.L.Rev. 168 (1977).

6. The statement could have meant "Yes, I will take the test, but there is no need to do so because I am intoxicated," or it could have meant "No, I will not take the test because there is no need to do so because I am intoxicated" as well as several other possibilities.

requested by the officer. Whether the declination is accomplished verbally by a statement "I refuse" or by remaining silent, or by a conditional consent is immaterial since such conduct constitutes a "refusal" within the meaning of the law.[7] Here there was a ". . . volitional failure to do what is necessary in order that the test can be performed . . . ." *Spradling v. Deimeke*, supra, 528 S.W.2d at 766.

The purpose of our statute providing for the revocation of a license for "refusing" to submit to a test is not to punish the licensee but to protect the public. *State v. Byerly*, supra, 522 S.W.2d at 21. The operation of a motor vehicle while under the influence of intoxicants gives rise to separate and independent proceedings, one civil and one criminal, and the outcome of one proceeding is of no consequence to the other. *State v. Byerly*, supra, 522 S.W.2d at 20.

The conclusion we reach that there was here a volitional declination or failure to submit to a chemical test is buttressed by analogous decisions in other states. In *Joyner v. Garrett*, 279 N.C. 226, 182 S.E.2d 553 (1971), the Supreme Court of North Carolina found a refusal to take a test when, inter alia, the licensee stated, " 'I knew I was drunk and I didn't see any need of taking the test.' " *Joyner v. Garrett*, supra, 182 S.E.2d at 556. The court held that the patrolman's testimony supported the finding ". . . as does petitioner's statement that he knew he was drunk and didn't see any need of taking the test." *Joyner v. Garrett*, supra, 182 S.E.2d at 560.[8]

And in *Clancy v. Kelly*, 7 A.D.2d 820, 180 N.Y.S.2d 923 (1958), it was held that the statutory conditions requiring revocation of the license were established. There the licensee testified, ". . . 'they asked me if I wanted to take a test and I answered

* * * I got the smell of beer on my breath * * * is there any sense in taking the test?' " *Clancy v. Kelly*, supra, 180 N.Y.S.2d at 924.

Appellant argues that there was no "refusal" within the meaning of the statute because there was no "unequivocal refusal" so as to authorize the revocation of his license. In effect he argues that to constitute a "refusal" it must be an unequivocal one. That is too broad a statement. A statement does not have to be wholly unequivocal before there is a "refusal." We do not read *Spradling v. Deimeke*, supra, to require a totally unequivocal refusal before the license may be revoked under § 564.444. A "refusal" may or may not be a "refusal" within the context of § 564.444 if the statement is equivocal. Some equivocation may not constitute a refusal if it is based on an asserted right which the licensee has. *Gooch v. Spradling*, supra; *Hester v. Spradling*, supra. But other equivocal statements may well constitute a "refusal" within the meaning of the law. This is not one of the equivocal statements which amounts to a nonrefusal.

Appellant also argues that because he admitted to being intoxicated, ". . . it can hardly be said that [he] frustrated the purposes of the implied consent law or the laws prohibiting driving while intoxicated." This argument is misplaced. *State v. Byerly*, supra. For appellant to say that he has furnished evidence of guilt for a criminal proceeding ignores the independent administrative procedures under § 564.444.

We therefore conclude that when appellant advised the officer that there was no need to submit to the breathalyzer test and "admitted he was drunk" this constituted a "refusal to submit to a chemical test"

---

7. *Kesler v. Department of Motor Vehicles*, 1 Cal.3d 74, 81 Cal.Rptr. 348, 459 P.2d 900 (banc 1969), *cert. den.*, 397 U.S. 989, 90 S.Ct. 1121, 25 L.Ed.2d 396 (1970)—motorist insisted on taking all three tests authorized by statute which amounted to a refusal; *Newman v. Smith*, 481 S.W.2d 679 (Ky.1972)—"God damn your old test" is a refusal; *State v. Lyon*, 129 Vt. 141,

274 A.2d 478 (1971)—driver would take test if officer would sign statement that if driver got infection he could sue officer.

8. The court reversed and remanded the cause because the trial court placed the burden of proof upon the licensee to show that his license was unlawfully suspended.

within the meaning of § 564.444 so that the trial court did not err in denying Count I of his petition for review seeking the restoration of his license.

We have read the record, the briefs of the appellant and the State, the authorities relied upon therein and have engaged in our own independent research. We find that the trial court did not erroneously declare or apply the law and accordingly affirm the order of the trial court denying the petition to set aside the order of revocation. *Murphy v. Carron,* supra, 536 S.W.2d at 32.

The judgment is affirmed.

All the Judges concur.