Patrick F. DUDENHOEFFER,
Appellant,

v.

DIRECTOR OF REVENUE, STATE OF
MISSOURI, Respondent.

No. WD 41689.

Missouri Court of Appeals,
Western District.

Dec. 5, 1989.

William Gay Mays, II, Columbia, for appellant.

Cinda J. Eichler, Fulton, for respondent.

Before NUGENT, C.J., and KENNEDY and FENNER, JJ.

FENNER, Judge.

Appellant, Patrick F. Dudenhoeffer, appeals from an order upholding the revocation of his driving privileges for refusing to submit to a chemical test pursuant to § 577.041, RSMo 1986.

On December 10, 1988, at approximately 3:35 a.m., appellant was involved in an automobile accident on Interstate 70 near Kingdom City, Missouri. Appellant had admittedly been drinking and he fell asleep behind the wheel of his car colliding with a vehicle parked on the shoulder of Interstate 70. Trooper Sandra Munden, of the Missouri Highway Patrol, arrived at the scene shortly after the accident. Due to appellant's appearance, his slurred speech, the odor of alcohol on his breath, and his admission of drinking, Trooper Munden believed that appellant had been driving while intoxicated and placed him under arrest at 4:05 a.m. Appellant was transported to a hospital for examination at about 4:15 a.m. and Trooper Munden followed.

Trooper Munden contacted appellant while he was sitting on a stretcher at the hospital. Trooper Munden explained the implied consent law to appellant, (§ 577.-020, RSMo 1986), asked him to take a blood test and advised him that if he refused his license would be revoked for one year. Appellant told the Trooper "he didn't know what to do because he knew he would check positive". Trooper Munden again explained the implied consent law and the consequences of appellant refusing to take a blood test. Trooper Munden testified that appellant appeared to understand her. Trooper Munden believed that appellant was stalling because he kept telling her that he did not know what to do and that "he needed more time because he was aware that it takes two hours to get an ounce of alcohol out of your system."

After their initial conversation in regard to the blood test and appellant's request for additional time, Trooper Munden waited about five minutes and again asked appellant to submit to a blood test. Once again appellant responded that "he didn't know what to do." Trooper Munden told appellant that he had to make a decision and gave him about ten more minutes to make up his mind. During this ten minutes appellant asked the trooper questions which she answered. Finally Trooper Munden told appellant that she was not going to wait around the hospital any longer for him to decide what to do, and if he told her again that he didn't know what to do that she was going to consider it a refusal. Appellant again stated that "he didn't know what to do." Trooper Munden considered this a refusal and left the hospital at about 5:00 a.m.

At approximately 6:00 a.m., Trooper Munden received a call from the hospital advising that appellant was requesting a blood test at that time. Trooper Munden informed the hospital personnel that she already considered that appellant had refused the blood test.

Appellant was released from the hospital at 6:30 a.m., which was approximately 3 hours after the accident. Trooper Munden returned to the hospital upon appellant's release and transported him to the county jail. They arrived at the jail at approximately 7:00 a.m.

In his first point appellant argues that the evidence did not support a finding that appellant refused to submit to a blood alcohol test and that he was not in a state to make an informed decision.

Where an appellant challenges the findings in a court tried case, the appellate court shall review the case upon both the law and the evidence, with due regard given to the opportunity of the trial court to judge the credibility of the witnesses. *Stenzel v. State, Dept. of Revenue*, 536 S.W.2d 163, 166 (Mo.App.1976). Where testimony is in conflict, the appellate court gives deference not only to the trial court's findings on issues of credibility, but also to its conclusions, and all fact issues are deemed to have been found in accordance with the result reached. *Id.* at 168.

■ Appellant contends that "due to his injuries" and "the urgency of the moment,"

his mind was not clear enough to make an informed decision and he cannot be deemed to have refused the blood test. However, Trooper Munden testified that appellant was not seriously injured and the evidence was that appellant was not admitted to the hospital for treatment. Appellant was at the hospital for approximately two hours and a great deal of his time at the hospital was spent waiting for a doctor. Trooper Munden testified that she did not observe any injuries to appellant's head. When appellant was asked what he was told in regard to head injuries he stated, "I think they just said that I'd be all right." Appellant's injuries do not support his contention that he was not able to make an informed decision due to his injuries.

Appellant's contention that "the urgency of the moment" prohibited him from making an informed decision is likewise not supported by the evidence. Trooper Munden requested that appellant submit to a blood test at least three times and gave him ample opportunity to make a decision before an ultimatum was finally communicated to him. An officer is not required to give a defendant unlimited time to make up his mind before recording his equivocality or indecision as a refusal. See *Rains v. Director of Revenue*, 728 S.W.2d 649 (Mo. App.1987); *Rogers v. King*, 684 S.W.2d 390 (Mo.App.1984); *Painter v. Director of Revenue*, 618 S.W.2d 297 (Mo.App.1981); and *Curry v. Goldberg*, 614 S.W.2d 318 (Mo. App.1981).

Appellant argues further in support of his first point that his indecision was an effort to consult with someone prior to making a decision. However, the record does not reflect that appellant ever asked to be given the opportunity to consult with anyone. Furthermore, by appellant's own admission he "kept asking [Trooper Munden] more questions and she kept telling me all this stuff, and I heard it—I heard it a bunch of times. She—she kept explaining it to me ...", and "... she went through—over the whole process of telling me what it was maybe three or four times." Trooper Munden testified that appellant appeared to understand everything that she explained to him.

A driver who is advised of his rights under the implied consent law but declines to submit to a chemical test to determine his blood alcohol content is deemed to have refused the test so as to require revocation of his driver's license unless he objectively and unequivocally manifests, at the time he is so advised, that he does not understand his rights and the warning concerning the consequences of a refusal, and is denied clarification. See *Spradling v. Deimeke*, 528 S.W.2d 759, 766 (Mo.1975). The intentional failure to do what is necessary in order that a chemical test of a driver's blood alcohol content can be performed is a refusal. *Id.*

Appellant's first point is denied.

In his second point appellant argues that his driver's license was revoked arbitrarily because of Trooper Munden's decision not to administer a chemical test of his blood alcohol content. Appellant argues that he did agree to take the blood test while he was still at the hospital and that he was willing to take the breathalyzer at the county jail, but that his willingness to do so was thwarted by Trooper Munden's earlier decision to consider that he had refused the test.

Once it has been properly determined that a driver has refused to submit to a given chemical test to measure his blood alcohol content, the driver's subsequent request or offer, at a later time, to submit to the same or another chemical test does not alter his earlier refusal and has no bearing on the revocation of his license. See *McGuire v. Jackson County Prosecuting Attorney*, 548 S.W.2d 272, 274 (Mo.App.1977); see also, *Painter v. Director of Revenue*, 618 S.W.2d at 298.

Appellant did not express a willingness to submit to the blood test until Trooper Munden had left the hospital and after the trooper advised him that she considered his position a refusal. Appellant's earlier refusal was clearly the basis for Trooper Munden's position not to afford appellant the opportunity to submit to any later tests. Appellant's refusal to submit to the blood test when requested authorized revo-

cation of his license pursuant to § 577.041, RSMo 1986, and this refusal is not altered by appellant's offer at a later time to take the test.

The judgment of the trial court is affirmed.

All concur.